**WO**                                                                                          **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frederick W. Covell,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Joseph Arpaio,<br><br>　　　　Defendant. | No. CV 07-2453-PHX-DGC (DKD)<br><br>**ORDER** |

Plaintiff Frederick W. Covell brought this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio (Doc. # 10). Before the Court is Defendant's Motion for Summary Judgment (Doc. # 19), which is fully briefed (Doc. ## 31, 34). The Court will grant Defendant's motion and terminate the action.

**I.    Background**

Plaintiff's claims arose during his confinement at the Maricopa County Lower Buckeye Jail in Phoenix, Arizona (Doc. #10 at 1).[1] The Second Amended Complaint set forth three claims for relief; two of those claims remain (id.).[2] In Count I, Plaintiff alleged that Defendant violated Plaintiff's First Amendment rights by instituting a policy that bans incoming letters and restricts inmates' incoming mail to metered postcards (id. at 3). In

---

[1] Plaintiff has since been transferred to the custody of the Arizona Department of Corrections (Doc. # 35).

[2] Count III was dismissed on screening (Doc. # 11).

Count II, Plaintiff claimed that Defendant's mail policy prevented him from receiving legal mail from witnesses in his criminal case (id. at 4).

The Court screened Plaintiff's Second Amended Complaint and found that Counts I and II, raised claims under the First Amendment (Doc. # 11). The Court ordered Defendant to respond to Counts I and II, and Defendant filed an Answer (Doc. # 13). The Court issued a Scheduling Order (Doc. # 14), and discovery commenced. Defendant then filed his Motion for Summary Judgment (Doc. # 19).

## II. Defendant's Motion for Summary Judgment

### A. Defendant's Contentions

Defendant seeks summary judgment on the ground that Plaintiff's constitutional rights were not violated (id.).

#### 1. Count I

Defendant first argues that the mail policy limiting incoming non-privileged mail[3] to metered postcards passes muster under the four-prong test set out in Turner v. Safley, 482 U.S. 78, 89 (1987) (id. at 6-10). These four prongs examine whether there is rational connection between the regulation and a legitimate governmental interest, whether there are alternative means to exercise the right at issue, whether accommodation will have an adverse impact, and whether there are obvious and easy alternatives to the regulation. Turner, 482 U.S. at 89-91.

First, Defendant contends that the policy has a rational connection to a legitimate governmental interest; namely, to prevent the smuggling of contraband and promote safety and security (id. at 4-5). Defendant claims that metered mail is required because a variety of drugs, including "Black Tar" herion, PCP, LSD, marijuana, cocaine, and powdered pills, are concealed under stamps (id.). Defendant further claims that note pads have been hollowed to create hidden depositories for other contraband, including blades, handcuff keys, or other weapons (id.). Defendants asserts that Plaintiff has alternative means of

---

[3] The mail policy does not apply to "privileged" mail, which is legal correspondence that an inmate receives (DSOF ¶ 8).

- 2 -

communication; he may send and receive an unlimited amount of mail, he can receive visitors, and he can communicate by telephone (id. at 13). Defendant also asserts that there would be adverse impacts on jail staff, other inmates, and prison resources if the jail were to accommodate inmate mail correspondence other than metered postcards. Defendant argues that there would be an increase in the likelihood of contraband smuggling, which in turn would put inmates and staff at risk (id. at 13-14). Finally, Defendant claims that there are no obvious, easy alternatives to the mail policy (id. at 14-15).

### 2. Count II

With respect to Plaintiff's second claim – that the mail policy prevented him from corresponding with his witnesses in his criminal case – Defendant argues that the mail policy does not apply to privileged mail (id. at 16). First, Defendant claims that Inmate Legal Services (ILS) is responsible for providing inmates access to legal materials and referral services. An inmate who represents himself in his criminal proceedings may submit unstamped and properly addressed mail to ILS for processing (id.). Defendant claims that Plaintiff was added as a pro per inmate on December 26, 2007, and signed for his copy of the "Guidelines for the Pro Per Inmate" that day (id.). The guidelines explain that pro per inmates are permitted free legal mail to the courts, advisory counsel, opposing counsel, and witnesses on a certified court witness list (id.). Defendant asserts that Plaintiff filed two witness lists: the first, dated March 24, 2008, listed Erich Lentes and an unknown investigator; the second, dated May 1, 2008, listed Erich Lentes, William Harrington, and an unknown investigator (id. at 17).

Defendant disputes Plaintiff's claim that he was unable to receive legal mail from Jose (last name unknown), Angel Valenzuela, Autumn Sumner, and an unknown potential witness. Rather, Defendant contends that Plaintiff's witness list did not include these individuals (id.).

Finally, Defendant contends that Plaintiff's claims are subject to dismissal because he has not suffered the requisite physical injury required under 42 U.S.C. § 1997e(e) (id. at 18).

In support of his motion, Defendant submits a Statement of Facts (Doc. # 20, DSOF); Plaintiff's Maricopa County Sheriff's Office (MCSO) Booking Ticket (id., Ex. 1); the affidavit of John "Jack" MacIntyre (id., Ex. 2); a copy of the Inmate Notice re: Informal Post Card Policy (id., Ex. 3); MCSO Policy #DP-6, Inmate Legal Services (id., Ex. 4); MCSO Inmate Legal Services Pro Per List (id., Ex. 5); Guidelines for the Pro Per Inmate (id., Ex. 6); copies of Plaintiff's Witness Lists (id., Ex. 7); excerpts from Plaintiff's Deposition (id., Exs. 8-9, Pl. Dep., Nov. 26, 2008); and the affidavit of Inmate Legal Services Supervisor Carol Lillie (id., Ex. 10).

### B. Plaintiff's Response

The Court issued an Order informing Plaintiff of his obligation to respond to the motion (Doc. # 21).[4] Plaintiff opposes Defendant's motion and argues that material facts exist on his claims; thus, summary judgment is not warranted (Doc. # 31 at 1).

Plaintiff disputes Defendant's claim that the mail policy is reasonably related to a legitimate governmental interest (id. at 2). Plaintiff argues that mail from his 78-year-old mother in a nursing home poses no risk to jail safety or security (id.). He maintains that he has been denied the right to read a "heart felt letter" and correspondence from his witnesses in his criminal case (id.). Plaintiff further claims that the jail rejected mail from Eric Lentes, a witness in his criminal case, on three separate occasions (id.). Consequently, Plaintiff argues that his Sixth Amendment rights were violated by the mail policy (id. at 3).

Plaintiff argues that 42 U.S.C. § 1997e(e) does not apply to First Amendment claims. Plaintiff also disputes that the mail policy is rationally related to a legitimate penological objective (id. at 4). Plaintiff claims that only one out of 10,950 envelopes actually contains contraband, which does not necessitate the restrictive post-card policy (id.). Plaintiff contends that there is no safeguard against censorship of protected speech (id. at 5).

Plaintiff further maintains that his legal mail was affected by the postcard policy (id. at 6). Plaintiff argues that one complete letter is the equivalent of 40 postcards (id. at 7).

---

[4] Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998).

1 And Plaintiff claims that only two of eleven postcards are in metered form, which
2 demonstrates Defendant is not truthful regarding the mail policy (id. at 8).

Plaintiff argues that the mail policy is an overly broad response to the contraband problem (id. at 9). He argues that Defendant failed to provide specific evidence that incoming mail ever caused disciplinary or security issues (id.). And he claims that the mail policy is a merely a tool for administrative convenience (id. at 10).

Finally, Plaintiff lists the injuries he has suffered while in custody in the Maricopa County Jails: (1) lack of medical care for ruptured discs; (2) increasing cholesterol levels; (3) staph infection; (4) shingles; (5) excessive hair loss; and (6) a broken finger (id. at 11).

In support of his response, Plaintiff submits a Statement of Facts (Doc. # 32, PSOF); copies of envelopes (Doc. # 31, Ex. 1); notes from Inmate Legal Services (id., Ex. 2); eleven postcards (id., Ex. 3); copies of grievances addressing the mail policy (id., Exs. 4-6); copies of mail rejection slips (id., Ex. 7); copies of correspondence (id., Ex. 8); a copy of Plaintiff's Notice of Deposition (id., Ex. 9); MCSO Inmate Legal Services Policy (id., Ex. 10); a copy of Plaintiff's witness list (id., Ex. 11); a copy of the postcard policy (id., Ex. 12); copies of the Amended Judgment in Hart v. Hill, 77-479-PHX-EHC (id., Ex. 13); copies of inmate legal requests, documents from Plaintiff's criminal case and documents from this action (id., Exs. 14-16); and copies of medical request forms and medical records to support his injury allegations (Doc. # 32, Exs. M1-M6).

### C.     Defendant's Reply

Defendant replies that Plaintiff provided no proof that his legal mail was improperly rejected (Doc. # 34 at 1). Defendant also disputes Plaintiff's claim that "one in 10,950 envelopes contain contraband" (id. at 2). Defendant reiterates that in the past three years, the MCSO has experienced a growing number of incidents of attempted smuggling of contraband into the jail, which renders the mail policy rationally related to a legitimate penological objective (id.). Defendant also maintains that Plaintiff's suggestion that all incoming mail be inspected for contraband would be detrimental to safety because substantial staff time would be diverted to process the mail (id. at 3). Defendant argues that because

- 5 -

Plaintiff can offer no obvious or easy alternative to the policy, it satisfies Turner's reasonableness standard. Finally, Defendant states that Plaintiff suffered no physical injury while in Maricopa County custody (id. at 4).

**III.  Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

At summary judgment, the judge's function is not to weigh evidence and determine truth, but to determine whether there is a genuine issue for trial. Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party.

Anderson, 477 U.S. at 255. And all reasonable inferences that may be drawn from the facts must be drawn in favor of the opposing party. See <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**IV.    Analysis**

    **A.    First Amendment Legal Standard**

Inmates enjoy a First Amendment right to send and receive mail. <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995). Inmates' First Amendment rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." <u>McElyea v. Babbitt</u>, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). A regulation that impinges on an inmate's First Amendment rights is valid if that regulation "'is reasonably related to legitimate penological interests.'" <u>Frost v. Symington</u>, 197 F.3d 348, 354 (9th Cir. 1999) (citing <u>Turner v. Safley</u>, 482 U.S. 78 (1987)). Deterring criminal activity and maintaining prisoner security are legitimate penological interests that justify regulations on prisoner mail. <u>O'Keefe v. Van Boening</u>, 82 F.3d 322, 326 (9th Cir. 1996).

As mentioned earlier, to determine the validity of a regulation, courts apply the test established under <u>Turner v. Safely</u>, which considers four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest the regulation is designed to protect; (2) whether the prisoner has alternative means of exercising the right at issue; (3) the impact any accommodation would have on guards, other inmates, and allocation of prison resources; and (4) whether there are "ready alternatives" for furthering the government interest, which would suggest that the regulation is an exaggerated response to the jail's concern. <u>Turner</u>, 482 U.S. at 89-90.

The standard is deferential. Courts must give "substantial deference to the professional judgment of prison administrators." <u>Beard v. Bank</u>, 548 U.S. 521, 528 (2006) (citing <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003)). A court does not have to agree with the officials' proffered legitimate penological interest. <u>Frost</u>, 197 F.3d at 355. The inquiry under <u>Turner</u> is not whether the policy actually serves a penological interest, but rather

- 7 -

whether it was rational for jail officials to believe that it would.  Mauro, 188 F.3d at 1060.

**B.     Metered-Only Postcard Policy - Count I**

**1. Rational Connection to Legitimate Governmental Interest**

The first factor requires a determination whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the policy is rationally related to that objective.  Thornburgh, 490 U.S. at 414.  Initially, a defendant must advance a "valid, rational connection" between a policy or procedure and the legitimate governmental interest cited to justify it.  Turner, 482 U.S. at 90.  "Specifically, the 'logical connection between the regulation and the asserted goal' must not be 'so remote as to render the policy arbitrary or irrational,' and the governmental objective must be both 'legitimate and neutral.'"  Frost v. Symington, 197 F.3d 348, 354 (9th Cir. 1999) (quoting Turner, 482 U.S. at 89-90).

The purpose of the mail policy is to "eliminate or limit the mail smuggling of contraband [into the jails], such as narcotics, handcuff keys, weapons, or weapons making materials from non-inmates to inmates" (DSOF ¶ 33).  Defendant's affiant, Deputy Chief Jack MacIntyre, attests that between 9,000 and 10,000 inmates are incarcerated within the Maricopa County jail system at any given time (Doc. # 20, Ex. 2, MacIntyre Aff. ¶ 5).  Each day the jails receive between 2,000 and 4,000 pieces of mail for inmates (id.).  Each piece of mail is inspected to determine whether contraband is contained in the envelope (id.).  MacIntyre further explains that during the past three years, the MCSO has experienced an increase in the attempted smuggling of contraband into the jail system (id. ¶¶ 6, 8).  Specifically, (1) the back of postage stamps have contained various drugs, bodily fluids, and other unknown liquids and powders and (2) notepad bindings have been hollowed to conceal contraband such as handcuff keys, metal strips or pieces, and saw blades (id. ¶ 6).  In response to the growing contraband smuggling, the MCSO implemented the mail policy to limit the method of communication without limiting the substance of communications between inmates and others (id. ¶ 8).

Jail security is a legitimate penological interest.  Turner, 482 U.S. at 91.  Defendant's

- 8 -

evidence demonstrates that the reduction of contraband smuggling is a legitimate goal of the Maricopa County jails and that the mail policy is reasonably related to furthering that goal. The policy is also neutral on its face – there is nothing to indicate that the aim of the policy is to suppress expression. Thornburgh, 490 U.S. at 415-16 ("the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression).

Plaintiff contends that there is no rational connection between the policy and the jail's stated purpose of reducing contraband (Doc. # 31 at 1-2), but Plaintiff's assertion is not supported by facts or evidence. Plaintiff does not dispute that contraband can be smuggled through the mail. Instead, Plaintiff disputes the severity of the smuggling problem and concludes through his own calculations that only one in 10,950 pieces of mail contains contraband (PSOF ¶ 15). Plaintiff does not have personal knowledge about the prevalence of contraband in the jails, and his calculations are based on speculation. Plaintiff's general claim that the mail policy is not rationally related to a legitimate penological objective is nothing more than a conclusory allegation insufficient to defeat summary judgment. Taylor, 880 F.2d at 1045.

To the extent Plaintiff claims that postcards with stamps are sometimes received by inmates, the Court finds that those instances are not sufficient to show that the policy lacks a rational connection to a legitimate penological goal. Some staff members' failure properly to screen postcards does not bear on whether the policy itself is geared toward reducing contraband and increasing security.

"[W]hen the inmate does not present enough evidence to refute a common-sense connection between a prison regulation and the objective that government's counsel argues the policy was designed to further . . . Turner's first prong is satisfied. Frost, 197 F.3d at 357 (internal quotations omitted). This factor favors Defendant.

### 2. Alternative Means of Exercising the Right at Issue

The second Turner factor considers "whether there are alterative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90. The right at issue in

this case is the right to communicate with family and friends. Inmates have a First Amendment right to receive mail. Witherow, 52 F.3d at 265. When analyzing the second Turner factor, the Court must view the right in question "sensibly and expansively." Thornburgh, 490 U.S. at 417 (citation omitted).

Metered postcards, telephones, and jail visits may in Plaintiff's view be less than ideal means of communicating with his family and friends, but jail-provided alternatives need not be ideal. See Overton, 539 U.S. at 135 ("[a]lternatives to [the regulation] need not be ideal . . . ; they need only be available"). Plaintiff has presented no evidence to show these alternative means of communicating are unavailable to him. The second Turner factor weighs in favor of Defendant.

### 3. Adverse Impacts of Accommodation

The third prong requires the Court to analyze the impact on the jail and other inmates if inmates are allowed to received stamped letters. Turner, 482 U.S. at 90. Defendant submits evidence that allowing stamped mail would increase the likelihood of smuggling contraband into the jail, which in turn would lead to conflicts and violence between inmates (Doc. # 20, Ex. 2, MacIntyre Aff. ¶ 10). MacIntyre attests that eliminating stamped mail has allowed its limited security staff to devote more time to prison security assignments (id.).

Plaintiff has not refuted these claims with anything other than conclusory assertions. See Frost, 197 F.3d at 358 (applying the same burden-shifting standard set forth under the first prong's common-sense analysis to the third prong analysis). The Supreme Court has stated that "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion fo corrections officials." Turner, 482 U.S. at 90. The asserted "ripple effect" here is sufficient to tip the third factor in Defendant's favor.

### 4. Obvious, Easy Alternatives or "Exaggerated Response"

The final Turner factor examines whether the policy is an exaggerated response to the jail's concerns. Turner, 482 U.S. at 90. On this prong, Plaintiff bears the burden of showing that there are obvious, easy alternatives to the regulation. Mauro, 188 F.3d at 1062. If

Plaintiff can identify an alternative that fully accommodates the right at a *de minimis* cost to valid penological goals, the policy is an exaggerated response. Turner, 482 U.S. at 90-91.

Plaintiff contends that jail staff could inspect each piece of mail and remove the stamps (Doc. # 31 at 7-8). It is not obvious, however, and there is no evidence, that this alternative would accommodate the right at a *de minimus* cost to the jail. See Overton, 539 U.S. at 136 (as to the fourth prong, the question is "whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost"). Nor does Plaintiff show that this alternative would not cause administrative inconvenience, a factor to be considered under the final Turner prong. Thornburgh, 490 U.S. at 419. Plaintiff has failed to meet his burden of showing an obvious and feasible alternative. The last factor weighs in Defendant's favor.

The Court concludes that Plaintiff has not established a genuine issue of material fact that the metered postcard policy violates his First Amendment rights. Defendant has shown that the mail policy is reasonably related to legitimate penological objectives. Defendant is therefore entitled to summary judgment on this claim in Count I.

### C. Legal Mail - Count II

In Count II, Plaintiff alleged that Defendant's mail policy prevented him from receiving mail from witnesses in his criminal case (Doc. # 10 at 4). Defendant has presented evidence that the mail policy does not apply to legal or "privileged" mail, and the reason Plaintiff did not receive some mail was because he did not include the senders on his witness list (DSOF ¶¶ 7, 47-48). In his deposition, Plaintiff alleged that he did not receive legal mail from witnesses: Jose (unknown last name), Angel Valenzuela, Autumn Sumner, and an unknown potential witness (DSOF ¶ 49). But these individuals were not on either of Plaintiff's witness lists (Doc. # 20, Ex. 7).

Plaintiff does not meaningfully respond to Defendant's evidence that the mail policy does not apply to legal mail. He does not dispute that the above named individuals were not on his witness lists. Instead, Plaintiff alleges that mail from Eric Lentes (a witness on his list) was rejected three times. Plaintiff does not say why these letters were rejected, nor does he

provide any evidence to support the claim. In his deposition, Plaintiff claimed that all of his mail should be considered legal mail because he was representing himself (Doc. # 20, Ex. 9, Pl. Dep. 37:7-10).

Plaintiff appears to allege that the rejection of mail from Eric Lentes constituted a denial of access to the courts. But to the extent that Plaintiff makes this claim, it fails because Plaintiff has not argued or demonstrated any injury from the alleged rejection of correspondence. Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007), vacated on other grounds, 129 S. Ct. 1036 (2009). Moreover, even if the Court were to conclude that Eric Lentes's correspondence was improperly excluded, that does not render *this* Defendant responsible for that conduct. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (to prevail on a claim under § 1983, plaintiffs must establish that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant). Plaintiff has not alleged or shown that any violation of the policy was at Arpaio's direction. Because there is no *respondeat superior* liability under § 1983, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. Monell v. New York City Department of Social Services, 436 U.S. 658, 691-92 (1978); Taylor, 880 F.2d at 1045.

Consequently, the Court cannot find that the mail policy caused Plaintiff's legal mail to be improperly rejected. Defendant is entitled to summary judgment on Count II.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. # 19).

(2) Defendant's Motion for Summary Judgment (Doc. # 19) is **granted**.

1     (3)     The Clerk of Court shall dismiss this action and enter judgment accordingly.

DATED this 24th day of September, 2009.

*David G. Campbell*
United States District Judge